The STATE ex rel. CELEBREZZE, Atty. Gen., Appellant,

v.

GROGAN CHRYSLER–PLYMOUTH, INC., Appellee.

[Cite as *State ex rel. Celebrezze v. Grogan Chrysler–Plymouth, Inc.* (1991), 73 Ohio App.3d 792.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–254.

Decided June 28, 1991.

*Lee Fisher,* Attorney General, *Ted Barrows* and *Donald A. Nickerson, Jr.,* Assistant Attorneys General, for appellant.

*Ellis Robinson* and *Christopher Hohenberger,* for appellee.

---

*Per Curiam.*

This is an appeal by Anthony J. Celebrezze, Jr., Attorney General of Ohio, appellant, from a judgment entry of the Lucas County Court of Common Pleas which granted appellee, Grogan Chrysler–Plymouth, Inc., summary judgment on a declaratory judgment complaint. The complaint alleged that

appellee's practice of charging consumers for delivery and handling on new automobiles is an unfair, deceptive and/or unconscionable act pursuant to the Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345. Appellant prayed for, *inter alia*, injunctive relief and a judgment declaring appellee's practice of charging for delivery and handling to be unfair, deceptive and/or unconscionable. We find that the trial court erred in granting summary judgment to appellee and reverse.

The complaint in this case was filed on January 18, 1990, but the history of this dispute goes back to September 1988 when appellant served a subpoena on appellee pursuant to R.C. 1345.06, which states:

"(A) If, by his own inquiries or as a result of complaints, the attorney general has reasonable cause to believe that a person has engaged or is engaging in an act or practice that violates Chapter 1345. of the Revised Code, he may investigate.

"(B) For this purpose the attorney general may administer oaths, subpoena witnesses, adduce evidence, and require the production of relevant matter.

" * * *

"(C) Within twenty days after a subpoena has been served, a motion to * * * quash the subpoena * * * may be filed * * *."

The subpoena demanded production of certain documents relating to appellee's practice of charging for delivery and handling in the sale of new automobiles. Upon receipt of the subpoena, appellee filed a motion to quash pursuant to R.C. 1345.06(C). The trial court overruled the motion. Many months later, appellee filed a notice of refusal to produce the subpoenaed documents, and the trial court filed a judgment entry holding appellee in contempt. Appellee appealed to this court from both the overruling of the motion to quash and the finding of contempt. On March 1, 1991, this court upheld both of the trial court's orders.

During the course of the two and one-half year dispute over the subpoena, appellant filed its declaratory judgment complaint, which is the basis of the instant appeal. Appellee responded to the complaint with several motions: a motion to dismiss the complaint, a motion to suppress allegedly illegally obtained evidence, a motion to stay proceedings pending outcome of the subpoena dispute appeal, and a motion for a more definite statement. The trial court did not address or rule on the motion for stay or the motion for a more definite statement, but proceeded directly to the merits of the dispute. The court converted the motion to dismiss into a motion for summary

judgment, gave the parties notice of the conversion and held an oral hearing on the summary judgment and suppression issues.

Following the hearing, the trial court entered judgment in favor of appellee and held that several of the violations alleged by appellant were barred by the statute of limitations set forth in R.C. 1345.07(E), that appellant had violated R.C. 1345.05(A)(7) and therefore any evidence obtained by appellant due to this violation was suppressed, and that appellee was granted summary judgment since "the attorney general cannot say with any certainty that the conduct complained of [charging for delivery and handling] violated R.C. 1345.02 or 1345.03."

It is from this judgment that appellant has filed its notice of appeal with the following three assignments of error:

"1. The lower court erred in finding that R.C. § 1345.07(E) barred nine (9) out of twelve (12) consumer complaints sent to the Attorney General alleging unlawful conduct on the part of defendant-appellee.

"2. The lower court erred in finding that all consumer complaints regarding activity of defendant-appellee received by the Attorney General after the news broadcast of April 25, 1989, should be suppressed due to the lower court's finding of a violation of R.C. § 1345.05(A)(7).

"3. The lower court erred in finding that defendant-appellee was entitled to summary judgment by holding that the Attorney General could not say with any certainty that the conduct complained of violated R.C. §§ 1345.02 or 1345.03."

Appellant's first assignment of error challenges the trial court's finding that R.C. 1345.07(E), a two-year statute of limitations provision, barred nine of the twelve instances of alleged CSPA violations documented in certain consumer complaints filed in the trial court by appellant. The dates of the transactions on the twelve consumer complaints were from December 21, 1985 through May 19, 1988, with only three occurring after January 17, 1988. Since appellant's complaint was filed on January 18, 1990, the trial court held that the two-year statute of limitations barred use of the nine consumer complaints which arose from transactions occurring prior to January 18, 1988.

R.C. 1345.07(E) states:

"No action may be brought by the attorney general under this section to recover for a transaction more than two years after the occurrence of a violation."

Appellant avers that the statute of limitations should be tolled from September 21, 1988 or that appellee should be estopped from asserting the statute-of-limitations defense.

In support of its tolling premise, appellant argues that "a reasonable reading of the Consumer Sales Practices Act establishes that the General Assembly contemplated a tolling period with respect to statutory statutes [*sic*] of limitations." Appellant refers the court to R.C. 1345.10(C), which states:

"(C) An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later."

Appellant argues that while this section clearly gives a consumer the right to bring an action within one year after the termination of proceedings by the Attorney General, it should also apply to the Attorney General's Office itself and in effect toll the statute of limitations for the period of time the Attorney General is investigating a possible violation situation. The court finds no merit in this argument. If the legislature had intended this, it could have included the same language which appears in R.C. 1345.10(C) in R.C. 1345.-07(E).

 Appellant also contends that appellee should be estopped from asserting the statute-of-limitations defense since appellee's conduct in resisting the appellant's investigatory subpoena was the reason the complaint was not filed sooner. Appellant states that "Appellee's repeated and unwarranted refusals to comply with the Attorney General's subpoena delayed the Attorney General's decision to initiate a formal action." In support, appellant cites *McCampbell v. Southard* (1937), 62 Ohio App. 339, 16 O.O. 45, 23 N.E.2d 954. In that case, the tortfeasor in an automobile accident case had fraudulently and deliberately misidentified himself to the tort victim, thereby causing the victim to file suit against the wrong party. By the time the true identity of the tortfeasor was discovered, the statute of limitations had run. The court held that under these circumstances the tortfeasor was estopped from asserting the statute of limitations as a defense.

We see no comparison to the *McCampbell* case and the case presently before us. Appellee in the present case did not engage in fraud or deliberately misrepresent anything. It merely availed itself of the right to file a motion to quash a subpoena set forth in R.C. 1345.06(C). Further, we find that appellant could have filed its complaint against appellee at any time after it had "reasonable cause to believe" a violation had occurred, R.C. 1345.07(A),

and thus the filing of the complaint was not dependent on appellee's complying with the subpoena. Appellant had the option of filing the lawsuit and utilizing the discovery process to obtain the necessary documentation of appellee's practice of charging for delivery and handling.

We find that appellee was not estopped from asserting the statute-of-limitations defense. We further find that the two-year statute of limitations was not tolled for any reason in this case. Therefore, the trial court did not err in barring evidence of violations based on the nine transactions which occurred more than two years before appellant's complaint was filed. Appellant's first assignment of error is found not well taken.

■ Appellant's second assignment of error calls to question the trial court's ruling which suppressed any evidence of the twelve consumer complaints received by the Attorney General's Office as a result of a news broadcast in which Rick Ellis, a public relations officer of the Attorney General's Office, was interviewed concerning the practice of charging for delivery and handling in new car sales. Three of these consumer complaints were based on transactions within the two-year statute of limitations period. The text of the news broadcast is reproduced in Appendix A. The trial court stated in its judgment entry:

"If the news media, on their own, discover information from a proceeding in 1345.06 [investigatory powers of the Attorney General], the Attorney General has not violated the provision of R.C. 1345.05(A)(7) [prohibition against Attorney General disclosing identity of suppliers investigated and facts developed in investigation]. However, in this case the Attorney General in charge of this case briefed the public relations officer who, in turn, disclosed this information to the news media. Therefore, the spirit and [sic] the rule has been defeated by the blatant misconduct of the plaintiff."

R.C. 1345.05(A)(7) states:

"In carrying out his duties, the attorney general shall not disclose publicly the identity of suppliers investigated or the facts developed in investigations unless these matters have become a matter of public record in enforcement proceedings, in public hearings conducted pursuant to division (B)(1) of this section, or the suppliers investigated have consented in writing to public disclosure."

In addressing this assignment of error, we must discuss whether the trial court was correct in determining that appellant violated this statute. Appellant argues that it did not violate the statute since the identity of appellee and

the facts developed in appellant's investigation of appellee were not publicly disclosed by appellant. Appellant states that this information was obtained by the media in the media's own investigation of the litigation involving the subpoena dispute.

A review of the transcript of the news broadcast reveals that Rick Ellis did not say anything during the broadcast which would violate R.C. 1345.05(A)(7). The only other information the trial court had before it which is relevant to this issue is the affidavit of Rick Ellis and the oral arguments of counsel made at the hearing on the summary judgment motion. The Ellis affidavit states, in relevant part:

"In April of 1989, I was contacted by Mike Kosnar, who I knew to be a reporter employed by Channel 11 in Toledo, Ohio.

"Mr. Kosnar informed me that he had discovered the existence of litigation between the Attorney General and * * * Grogan Chrysler–Plymouth, Inc. * * *.

" * * *

"After contacting Assistant Attorney General Ted Barrows to acquaint myself with the facts and circumstances involved in the litigation pending at that time, I had several additional conversations with Mr. Kosnar. These conversations dealt with the subject of that pending litigation, i.e., the investigatory powers of the Attorney General under R.C. 1345.06 and the process of litigating a motion to quash, as well as the general topic of abuse of dealer added charges under a variety of names, such as 'dealer prep', 'dealer services', 'delivery and handling,' etc.

" * * *

"I informed Mr. Kosnar that I would not comment specifically on the investigation concerning * * * [appellee], but that I would be willing to comment, in a general way, on the practice in the automobile industry of charging dealer prep, delivery and handling and other add-on charges, and on the enforcement efforts that the Attorney General had undertaken in the past with regard to those practices.

" * * *

"At no time during the interview did I mention * * * Grogan Chrysler–Plymouth, Inc. * * * by name, or comment in any way on specific facts developed during the course of the investigation which was being conducted into * * * [its] practices."

At oral arguments appellee's counsel stated to the court:

"Now, it is the Attorney General's statement * * * [that] Mr. Ellis never mentioned Grogan Chrysler–Plymouth * * * or never mentioned that there was anything illegal about it, but he had three conversations with the reporter. *Certainly those conversations presumably came up with this kind of information and he told them what the Attorney General was investigating and what was being done.*" (Emphasis added.)

On the same subject, at the same hearing, appellant's counsel stated:

"Mr. Kosnar [media reporter] contacted Mr. Ellis. Mr. Kosnar or his people he works for had found out about the existence of the [subpoena] lawsuit. They were following up that discovery with seeking information from the public official involved. And as I said, as a general discussion of what we do in investigations, and it is a more specific discussion of what we had found in dealer prep cases, it in no way identifies these—this Defendant as somebody under investigation, although that was already done by Kosnar because he got it out of the public records.

"THE COURT: Where? Let me ask you this. I'll ask the questions if you don't mind, Mr. Barrows. Where did Mr. Kosnar get the name of Estelle Brown who bought a new car from Grogan Chrysler in 1987 and paid $125.00—

"MR. BARROWS: The first answer is I don't know. And the same way I don't know everything. And the second answer is the contract that reflects her purchase of the car was attached to my pleadings in defense of our 1345.06 authorization, and it in fact formed our reasonable cause basis to believe that this supplier was collecting that money.

"THE COURT: So at that time that was filed with Judge Doneghy in the Court?

"MR. BARROWS: Absolutely."

Appellant's counsel's statement to the court is backed up with the affidavit of Ellis. Appellee's counsel's statement to the court is not supported by anything in the record. It is merely counsel's presumption of what occurred. We find that there was no evidence before the trial court from which it could draw its conclusion that the "public relations officer * * * disclosed this information to the news media." We therefore find that the trial court's ruling that appellant violated R.C. 1345.05(A)(7) is against the manifest weight of the evidence, and we find appellant's second assignment of error well taken.

■ Appellant's third and final assignment of error challenges the trial court's ruling which states:

"This court hereby finds that the Attorney General may not proceed in an action filed pursuant to R.C. Section 1345.07 without a clear showing that the act or practice complained of is a violation of 1345 or that suppliers has [*sic*] been specifically notified that the act or practice is now considered to be a violation of R.C. [Chapter] 1345.

"* * * In as much as [*sic*] the Attorney General cannot say with any certainly [*sic*] that the conduct complained of violated R.C. 1345.02 or 1345.03, the Defendant's Motion for Summary Judgment must be granted."

R.C. 1345.07 governs when the Attorney General may proceed with an action against a supplier under the CSPA. This section states:

"If the attorney general, by his own inquiries, or as a result of complaints, *has reasonable cause to believe* that a supplier has engaged or is engaging in an act or practice that violates this chapter, and that the action would be in the public interest, he may bring any of the following[.]" (Emphasis added.)

Thus, we find that the trial court used the wrong standard in deciding this case. The Attorney General must only have "reasonable cause to believe" that a supplier has engaged in prohibited conduct before instituting an action. The trial court's standard that the Attorney General must make "a clear showing that the act or practice complained of is a violation" before bringing an action against a supplier has no basis in law. We therefore find that the trial court erred in applying the wrong standard to this case and find appellant's third assignment of error well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining in part, and judgment of the Lucas County Court of Common Pleas is reversed in part. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed in part*
*and cause remanded.*

HANDWORK, P.J., ABOOD and SHERCK, JJ., concur.

APPENDIX A

TWO EXCERPTS

FROM

NEWS BROADCASTS

OF

TOLEDO 11 NEWS

RE

INVESTIGATION

BY

THE OHIO ATTORNEY GENERAL'S OFFICE

OF

CAR DEALER PREP FEES

---

### NEWS CLIP NO. 1

FEMALE NEWS REPORTER: ... by the State. The probe stems from a statewide crackdown on dealerships illegally charging customers delivery and handling or dealer prep fees.

Investigative Reporter Mike Kosnar found out car buyers could be due thousands of dollars in refunds.

MR. KOSNAR: Do you have any idea what that went for?

MS. BROWN: No, none whatsoever.

MR. KOSNAR: You never—

MS. BROWN: No, I saw it and I just—you know, I just ignored it. I didn't know, you know.

MALE NEWS REPORTER: Estelle Brown bought a new car from Grogan Chrysler–Plymouth in 1987. She paid $125 in delivery and handling charges and she may get her money back.

That's because the Ohio Attorney General's Office is investigating Grogan and another dealership owned by the same company, Charlie's Dodge in Maumee. The AG's Office wants to know if Grogan and Charlie's are illegally charging for dealer prep.

Rick Ellis of the Attorney General's Office says such cases have been increasing.

MR. ELLIS: We suspect that some of these charges are additional dealer profit, otherwise known as double dipping; where the dealer is being reimbursed by the manufacturer and at the same time charging the consumer for the same services.

MALE NEWS REPORTER: Investigators want copies of sales contracts for cars and trucks sold during the last three years. Lawyers for Charlie's and Grogan have refused to turn them over. It is the first time an Ohio dealership has challenged a court order of this kind.

MR. KOSNAR: The legal battle has now made its way to the Ohio Supreme Court after a State Court of Appeals threw out a motion to have the case dismissed.

MALE NEWS REPORTER: Court documents filed by the Attorney General's Office state that the mere presence of the delivery and handling category in a contract, even if there is no charge, might mean the dealer is illegally charging consumers.

MR. ELLIS: We're not alleging that there has been wrongdoing by anybody—any parties in this case. We are looking for information.

MALE NEWS REPORTER: But dealership attorneys contend the State has no grounds for any investigation because there have not been any consumer complaints involving dealer prep charges.

Ironically, Estelle Brown may have triggered the dealer prep case against Charlie's Dodge and Grogan Chrysler-Plymouth without even knowing it. She had filed an unrelated consumer complaint with the Attorney General's Office concerning defects on her car. Investigators apparently stumbled onto her sales contract in that file and are using it as evidence in the dealer prep case.

Mike Kosnar, Toledo 11 News.

FEMALE NEWS REPORTER: A spokesman for Charlie's and Grogan's decline to go on camera to discuss the case, although he did provide some information used in Mike's story.

It's important to note that neither of the dealerships has been charged in the case and there are some situations when a dealer prep charge is legal.

But the Attorney General's Office has settled cases against two dealers. More than a hundred thirty customers split $24,000 in refunds, averaging about a hundred eighty dollars each.

If you have questions or think you may have been illegally charged a dealer prep fee, you can call the Ohio Attorney General's Office at 1–800–282–0515. That's 1–800–282–0515.

## NEWS CLIP NO. 2

\* \* \* \* \* \*

... those are being investigated by the Ohio Attorney General's Office tonight and the result could be refunds for car buyers totaling thousands of dollars.

Toledo 11 News has learned that Charlie's Dodge in Maumee and Grogan Chrysler–Plymouth in Toledo have become part of a statewide investigation into illegal delivery and handling of dealer prep fees.

According to the AG's Office, dealer prep fees are routinely reimbursed by the manufacturer and in most cases should not be passed on to the consumer.

MR. ELLIS: If you have dealers out there that are charging a delivery and handling fee, and there is no other explanation of what that fee is for, the best recourse is to ask the dealer for those records and find out exactly how they're being charged, and an explanation.

MALE NEWS REPORTER: Neither Charlie's nor Grogan's has been charged in the case. In two similar dealer prep lawsuits settled last fall, car dealers were forced to pay back almost $24,000 in refunds to more than 130 car buyers.

Now, if you have any questions or think you may have been illegally charged a dealer prep fee, you can call the Attorney General's Office at 1–800–282–0515.

\* \* \* \* \* \*

(End of video tape.)

## CERTIFICATE OF TRANSCRIBER

The transcript attached hereto contains some 6 pages. Said pages were transcribed from the audio portion of one video tape of two news broadcasts furnished by Ted Barrows, Esquire, of the Office of the Attorney General, Consumer Protection.

I hereby certify that the foregoing transcript of the aforementioned cause was transcribed by me to the best of my ability. I am neither a relative of person or persons involved in this action or a party thereof. Further, that I have no interest in the outcome of this action.

804

/s/ Margaret E. Spencer
MARGARET E. SPENCER
May 2, 1990.