# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Carlotta Evans,**
**Plaintiff Below, Petitioner**

**FILED**

May 3, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 12-0479** (Nicholas County 10-P-39)

**One Gateway Associates, a West Virginia Limited**
**Liability Company, Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Carlotta Evans, an attorney proceeding in her own interest, appeals the March 14, 2012, order of the Circuit Court of Nicholas County which ruled, *inter alia*, that there was no extension of the commercial lease she had with respondent for the location of her RadioShack store. Respondent One Gateway Associates, by William D. Stover, its attorney, filed a summary response to which petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent owns and operates a commercial shopping center in Summersville, West Virginia. Petitioner was a commercial tenant of respondent, who rented a location in the center from which she operated a Radio Shack store. The initial three-year lease term expired in June of 2007 and automatically renewed for an additional three-year period. The lease had no provision for a second automatic extension. The lease expired on June 30, 2010.

From 2007 to 2010, petitioner rented a second property in the shopping center, from which she and her son operated an oil change center and a U-Haul business. Petitioner asserts that from 2007 to July 31, 2010, when the lease on the oil change center ended, the U-Haul business was operated from the RadioShack on Sundays when the oil change center was apparently closed. However, Charles Stephen McCue, respondent's managing member, and Joy DeMoss, an employee who handles day-to-day management issues, both testified at deposition that U-Haul

1

trucks were not to be parked on the common parking lot for the rest of the shopping center[1] and that they complained when they noticed U-Haul trucks parked on the common parking lot.

At the time the RadioShack lease expired, the parties had not reached an agreement extending it for an additional period. Pursuant to the terms of the lease agreement, any holding over beyond that point constitutes a "tenancy from month-to-month only." Because the parties could reach no agreement as to an extension, respondent issued a notice to vacate the property on July 1, 2010, and pursuant to the lease, allowed petitioner one month to vacate. Further negotiations ensued.

Negotiations over extending the RadioShack lease became complicated by the fact that the lease for the oil change center was to terminate as of July 31, 2010. In a July 28, 2010 cover letter Ms. DeMoss sent, with a proposed Lease Modification and Extension Agreement ("Extension Agreement") for the Radio Shack location, Ms. DeMoss raised the issue of the U-Haul business:

> . . . When I spoke to [Mr. McCue] concerning the U-Haul trucks at the [oil changer center], he stated that they could not be parked out in the normal parking spaces. When Rodney[[2]] approached us about adding the U-Haul Truck Rental[,] it was for additional income for him at the [oil changer center]. When the [oil changer center] is turned back over to us[,] if Rodney return's [sic] it to us in a proper manner[,][Mr. McCue] would review what could be done with the trucks. Thank you.

The Extension Agreement proposed extending the RadioShack lease for a period of two years from July 1, 2010 to June 30, 2012, under the same terms and conditions as the original lease except for an increased monthly rent of $1,666.67 for the first year and $1,733.33 for the second year. The cover letter stated that if the Extension Agreement was acceptable to petitioner, she was to "sign both copies and have witnessed, and return them to us for [Mr. McCue]'s signature by Friday, July 30, 2010." Petitioner signed the Extension Agreement, but her signature was not witnessed or dated.

On July 31, 2010, the lease for the oil change center terminated. Also on July 31, 2010, petitioner remitted to respondent a check for $66.67 for the remainder of the July rent payment under the Extension Agreement for the RadioShack lease. On August 1, 2010, petitioner remitted to respondent a check for $1,873.25 for the August rent payment under the Extension Agreement.[3] Petitioner states respondent was in receipt of the copy of the Extension Agreement she signed and

---

[1] The oil change center had its own parking lot.

[2] Rodney Evans is petitioner's son.

[3] The July 28, 2010 cover letter advised petitioner to "[p]lease remit $1,873.35 for August and $66.67 that was shorted on the July rent for a total amount due of $1,940.02." In addition to rent, respondent charges its tenants certain costs.

2

the two checks by August 2, 2010, at which time petitioner says the Extension Agreement became binding on the parties.

However, on August 1, 2010, petitioner wrote a letter in reference to Ms. DeMoss's July 28, 2010, cover letter that was sent with the Extension Agreement. Petitioner wrote, in pertinent part, as follows:

> The next issue is our U-Haul business. *Your letter sounds as if you have not agreed that we will have space to park the U-Hauls. . . . Our renewal of the Lease for the RadioShack included the U-Haul business.* This is the first notice you have given that the U-Haul business might be a problem. We relied on continuing to rent U-Hauls as part of our calculations for paying increased rent over the next 2 years.
>
> *If you have not included the U-Haul business in our Lease Renewal, and this letter was your notification of such, then our acceptance of the Lease Renewal is withdrawn.* We do not accept your new terms if they do not include the U-Haul business.
>
> Please notify me as soon as possible as to whether or not you have included the U-Haul business in the Lease Renewal (emphasis added).

Because this letter is addressed to Ms. DeMoss, it will be referred to "the DeMoss letter." The DeMoss letter, while dated August 1, 2010, was not delivered until August 11, 2010.[4]

On August 9, 2010, Mr. McCue sent petitioner a letter regarding numerous issues relating to the termination of the oil change center lease. Mr. McCue concluded the letter by stating that "[w]e have not signed off on the [Extension Agreement] and will not until these issues at the [oil change center] are resolved."

On August 11, 2010, petitioner also delivered a second letter addressed to Mr. McCue ("the McCue letter"). In this letter dated August 10, 2010,[5] petitioner stated, in pertinent part, as follows:

---

[4] Petitioner states that she did not deliver the DeMoss letter to respondent until August 11, 2010. The circuit court found that the DeMoss letter was delivered sometime between August 1, 2010 and August 11, 2010. This finding appears to be incorrect because at the March 6, 2012, hearing on the parties' motions for summary judgment, both parties agreed that "the August 1st date is actually August 1st but it was delivered August the 11th."

[5] The McCue letter is dated July 10, 2010, however, the parties agree this is a typographical letter and that the correct date is August 10, 2010.

First, please consider this is my notice that *I do not agree to the new conditions on the Lease Renewal for the RadioShack.* Your letter has added a condition—that renewing the RadioShack lease is directly related to the [oil change center] lease—which is not acceptable to me. By notifying me on August 9, 2010, that you have not signed off on the July 1, 2010 Lease renewal, and that you will not sign off on the Lease Renewal until certain conditions related to a different lease are met, you have changed the terms of the Lease Renewal. There is also the issue of the U-Haul business, which was addressed in a separate letter to [Ms. DeMoss].

\* \* \*

*I would still prefer to proceed with the Lease Renewal but it must be separate from the ["oil change center"] lease and it must include the U-Haul business. If that is acceptable to you, please sign the renewal and provide me with my copy. If that is not acceptable to you, please notify me so that I can start making plans to move the RadioShack* (emphasis added).

On August 19, 2010, respondent sent petitioner a termination letter by certified mail that it was not extending the lease on the RadioShack.[6] The termination letter gave petitioner thirty days from its receipt to vacate the property.

After she received the termination letter, petitioner initiated the instant action. Petitioner was granted a preliminary injunction to stay on the RadioShack property.[7] The circuit court's September 10, 2010, order granting the injunction ordered petitioner to pay rent at the rate specified in the Extension Agreement[8] and ordered that the parties continue to be bound by the

---

[6] Also on August 19, 2010, respondent processed the checks petitioner remitted for $66.67 and $1,873.25. The termination letter indicated that money paid since June 30, 2010, would be credited for petitioner's occupation of the property at the monthly rental rate in effect at the time the RadioShack lease expired. This arrangement was consistent with the lease's holding over provision.

[7] In ruling in petitioner's favor, the circuit court explicitly stated that the preliminary injunction "does not extend to any U-Haul business operated on the Premises."

[8] A refund to petitioner was later ordered to the extent she paid rent for that period at the increased rate set forth in the Extension Agreement. *See* Footnote Eleven *infra*.

4

terms and conditions set forth in the original lease.[9] Petitioner occupied the RadioShack property under the injunction from September 10, 2010 to August 31, 2011.[10]

On October 7, 2010, petitioner filed an amended complaint asserting causes of action relating to the RadioShack lease and the oil change center lease. Respondent filed an answer and a counterclaim relating to the oil change center release on April 14, 2011.

Petitioner filed a motion for partial summary judgment on her claim that the Extension Agreement constituted a valid, binding contract between the parties. Respondent filed a motion for summary judgment on various issues including the validity of the Extension Agreement. The circuit court conducted a hearing on the parties' motions on March 6, 2012.

Subsequently, on March 14, 2012, the circuit court entered an order denying petitioner's motion for partial summary judgment, and granting in part and denying in part respondent's motion for summary judgment. The circuit court rejected petitioner's claim that the Extension Agreement was binding because her acceptance added an additional term—the inclusion of the U-Haul business—and, therefore, "[the] 'acceptance' of [respondent]'s offer for an extension of the RadioShack lease was not 'unequivocal and unconditional.'" *See* Syl. Pt. 2, in part, *The Bowers Company v. Kanawha Valley Products Company*, 100 W.Va. 278, 130 S.E. 284 (1925) ("A proposition to accept on terms varying from those offered is a rejection of the offer[.]").[11]

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the

---

[9] Respondent challenged the preliminary injunction through a petition for a writ of prohibition filed in this Court which refused the petition.

[10] The circuit court dissolved the preliminary injunction by an order entered August 2, 2011.

[11] The case proceeded to trial on the issues on which the circuit court did not grant respondent summary judgment. Respondent filed a motion to dismiss petitioner's appeal arguing that the circuit court's March 14, 2012, order did not constitute a final order. In her response to the motion, petitioner argues that the order was a final order because it disposed of at least one substantive claim, citing *Hubbard v. State Farm Indemnity Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003). Petitioner's view is supported by the circuit court's order in that the court stated the reason it was allowing petitioner to proceed on a breach of contract claim concerning certain costs assessed under the lease was because the *original* lease governed the period when petitioner occupied the property under the injunction from September 10, 2010, to August 31, 2011. The circuit court ordered a refund to petitioner to the extent she paid rent for that period at the increased rate set forth in the Extension Agreement. Therefore, this Court finds that the circuit court's order "approximates a final order in its nature and effect" regarding petitioner's claim regarding the validity of the Extension Agreement. *See* Syl. Pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Accordingly, respondent's motion to dismiss is hereby denied.

5

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Syl. Pt. 4, in part, *Painter*.

On appeal, petitioner argues that the circuit court erred in granting respondent summary judgment on her claim for breach of contract based on the Extension Agreement which petitioner says was valid. Petitioner states that the circuit court erroneously found that the DeMoss letter, dated August 1, 2010, was delivered on that date rather than on August 11, 2010. Respondent asserts that the exact dates of the DeMoss letter and the McCue letter are not important. Respondent asserts what matters, is that petitioner wrote the letters and that it received them after petitioner allegedly acted upon its offer of July 28, 2010. The DeMoss letter is particularly relevant because petitioner says that August 2, 2010, was when there was both an offer and an acceptance and, therefore, the Extension Agreement became binding on the parties. The DeMoss letter, which petitioner wrote the day before, reflects that the inclusion of the U-Haul business in the extension of the RadioShack lease was not agreed to by respondent. The circuit court was correct that "[petitioner] and [respondent] had not reached a 'meeting of the minds' as to the terms of the Extension Agreement." After careful consideration, this Court concludes that the circuit court did not err in granting respondent summary judgment on the claim.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Nicholas County and affirm its March 14, 2012 order which ruled, *inter alia*, that there was no extension of the commercial lease petitioner had with respondent for the location of her RadioShack store.

Affirmed.

**ISSUED:** May 3, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II