## State of Vermont v. Custom Pools, Chemical Bank and Gramatan Home Investors

[556 A.2d 72]

No. 86-079

Present: **Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed November 18, 1988

*Jeffrey L. Amestoy, Attorney General,* and *Denise R. Johnson* and *Susan M. Sussman, Assistant Attorneys General,* Montpelier, for Plaintiff-Appellant.

*Robert S. DiPalma* of *Paul, Frank & Collins, Inc.,* Burlington, for Defendant-Appellee Gramatan.

*Spencer R. Knapp* and *George A. Holoch, Jr.,* of *Dinse, Erdmann & Clapp,* Burlington, for Defendant-Appellee Chemical Bank.

**Mahady, J.** This appeal, brought by the State of Vermont, requires us to determine the authority of the Attorney General to proceed under the Consumer Fraud Act, 9 V.S.A. § 2451 et seq., against the holders of notes and mortgages obtained by their assignor in violation of the Act. The trial court found no such authority. We disagree and reverse.

## I.

Defendant, Custom Pools, Inc., ("Custom") engaged in the business of the home solicitation sale, installation and service of above-ground swimming pools. Custom advertised quality swimming pools which would sell for $629.00. Consumers who responded to the advertisements would be visited at their home by a salesperson. The salesperson would disparage the $629.00 pool and would "switch" the consumer to pools which sold for prices ranging from $3,200.00 to $5,000.00. Various representations concerning the pools were made by the salesperson. Material representations proved to be false.

If a sale was made, Custom would arrange financing for the consumer with defendant Gramatan Home Investors Corporation ("Gramatan"). The salesperson obtained the consumer's signature on second mortgage documents encumbering the consumer's home without the knowledge of the consumer. This was accomplished by having the consumer sign a series of documents attached to a clipboard in a manner that allowed only the top sheet,

usually the retail installment contract, to be fully visible. The mortage deeds were subsequently notarized by notaries public before whom the consumer did not appear.

The contract and mortgage forms were supplied to Custom by Gramatan. Gramatan also instructed Custom's sales personnel as to the method of filling out these documents. These instructions did not include a directive to leave a copy of the mortgage documents with the consumer. Subsequent to a sale, Gramatan would call the consumer to inquire whether the pool had been installed. No inquiries were made concerning the consumer's knowledge of the mortgage.

Pursuant to written agreements, Gramatan sold the installment contracts and mortgages to Chemical Bank ("Chemical"). Chemical paid Gramatan the net amount of the obligation paid by Gramatan to Custom plus the difference between the finance charge which had been disclosed to the consumer and a finance charge that would would apply at certain add-on rates for specific terms. Within two to five days of the execution of the documents by the consumer, Chemical directly notified the consumer of the assignment to Chemical and provided the consumer with a book of coupons to use when making payments.

The present action was commenced by the Attorney General on behalf of State of Vermont and on behalf of Vermont consumers to address alleged violations of the Consumer Fraud Act. Originally, the only defendant was Custom. Subsequently, Gramatan intervened and Chemical was joined as a party defendant.

At trial, Custom defaulted, and the trial court sitting without a jury found that the mortgage transactions of Custom were unfair and deceptive business transactions. Accordingly, judgment was entered against Custom. However, judgment was entered against the State as to defendants Gramatan · and Chemical on the grounds that these defendants had not committed any act or practice declared unlawful under 9 V.S.A. § 2453. The State appealed from the judgments in favor of Gramatan and Chemical.

## II.

Clearly, Gramatan and Chemical would be subject to all defenses which would be available to the consumers in an action on a simple contract brought against them by Custom. *Gramatan · Home Investors Corp.* v. *Starling*, 143 Vt. 527, 533, 470 A.2d

1157, 1160 (1983); *Randolph National Bank* v. *Vail*, 131 Vt. 390, 308 A.2d 588 (1973). They contend, however, that the Attorney General lacks authority to bring an action against them under the Consumer Fraud Act.

That statute authorizes the Attorney General to commence an action against "any person . . . using . . . any method, act or parctice declared by [9 V.S.A. § 2453] to be unlawful . . . ." 9 V.S.A. § 2458(a). In such cases, "the court is authorized to render any other temporary or permanent relief, or both, as may be in the public interest . . . ." 9 V.S.A. § 2458(b).

The purpose of the statute is to protect the public from unfair or deceptive acts or practices. 9 V.S.A. § 2451. It must be our primary objective to give meaning and effect to this legislative purpose. *Shufelt* v. *Department of Employment & Training*, 148 Vt. 163, 165, 531 A.2d 894, 896 (1987); *Harden* v. *Vermont Dept. of Taxes*, 134 Vt. 122, 124, 352 A.2d 685, 686 (1976). Further, the Act is clearly remedial in nature. Therefore, we must construe the statute liberally so as to furnish all the remedy and accomplish all the purposes intended. *State* v. *Central Vermont Ry.*, 81 Vt. 459, 460, 71 A. 193, 193 (1908); *Chase* v. *Erhardt*, 198 F. 305, 309 (D. Vt. 1912).

Gramatan and Chemical would have us read, as did the trial court, the verb "using" in 9 V.S.A. § 2458(a) as being synonymous with "doing" or "committing." Such a construction would authorize an action brought by the Attorney General only against a person who does or commits an act declared unlawful by 9 V.S.A. § 2453. The simple answer, of course, is that the Legislature did not in fact use the verbs "to do" or "to commit." Had the Legislature intended to limit its authorization to situations where a direct act was done or committed it could have done so with clear language to that effect.

Instead, the verb "to use" was selected. It is defined as follows: "To make use of, to convert to one's service, to avail one's self of, to employ." Black's Law Dictionary 1381 (5th ed. 1979). Gramatan and Chemical clearly made use of the documents fraudulently obtained by Custom; Gramatan and Chemical converted those documents to their service; they employed the documents for their business purposes.

The Legislature intended to place the burden of the cost of seller misconduct violative of the Consumer Fraud Act on the financing parties to the transaction. Such parties, unlike consum-

ers, are in a position both to police the activities of the seller and to protect themselves against misconduct. Wallace, *The Logic of Consumer Credit Reform*, 82 Yale L.J. 461 (1973). We would be derelict in our duties were we to frustrate that intent; indeed, it is our duty to give effect and meaning to the will of the Legislature. *In re A.C.*, 144 Vt. 37, 470 A.2d 1191 (1984).

The statute, 9 V.S.A. § 2458(a), authorizes an action, such as this, by the Attorney General. In view of this disposition of the case, it is unnecessary for us to address the other issues raised by the appellant.

*Reversed and remanded.*