461 S.E.2d 516

**STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff Below, Appellant,**

v.

**SCOTT RUNYAN PONTIAC–BUICK, INC., a West Virginia Corporation; Scott Runyan, Individually and as an Officer of Scott Runyan Pontiac–Buick, Inc.; Cox Pontiac–Buick, Inc., a West Virginia Corporation; A.W. Cox Department Store Co., a West Virginia Corporation; Wilber E. Cox, Individually; Wilber E. Cox II, Individually; Runyan Creditors Trust, Scott Runyan, Trustee; General Motors Acceptance Corporation, a Delaware Corporation; Citizens National Bank of St. Albans, a Federally Chartered Bank; and Other Financial Institutions as Yet Unknown, Defendants Below, Appellees.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, a Delaware Corporation, Defendant and Third–Party Plaintiff Below, Appellee,**

v.

**WORLD–WIDE WARRANTY, INC., and Guaranty National Insurance Company, Third–Party Defendants Below, Appellees.**

No. 22728.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided July 19, 1995.

■

Darrell V. McGraw, Jr., Attorney General, Donald L. Darling, Senior Deputy Attorney General, Jill L. Miles, Senior Assistant Attorney General, Charleston, for appellant.

E.W. Rugeley, Jr., William D. Esbenshade, Jackson & Kelly, Charleston, for appellee General Motors Acceptance Corp.

James T. Cooper, Lovett, Cooper & Glass, Charleston, for appellee World–Wide Warranty, Inc.

Deborah K. Aronoff, North Central W. Va. Legal Aid Society, Morgantown, amicus curiae.

Dennis R. Vaughan, Jr., Vaughan & Withrow, Charleston, for appellee Citizens Nat. Bank of St. Albans (now Bank One, West Virginia, St. Albans).

John R. Hoblitzell, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee Guaranty Nat. Ins. Co.

Steven S. Zaleznick, Deborah M. Zuckerman, American Ass'n of Retired Persons, Washington, DC, amicus curiae.

CLECKLEY, Justice:

The issue now before this Court is whether the plaintiff, Darrell V. McGraw, Jr., Attorney General,[1] is authorized to seek debt can-

---

1. The amended complaint was filed in the circuit court by the Honorable Mario J. Palumbo, who

cellations and/or refunds from the defendants, General Motors Acceptance Corporation (GMAC) and Citizens National Bank of St. Albans (now Bank One, West Virginia, St. Albans, N.A.). The Consumer Protection Division of the Office of the Attorney General of West Virginia filed suit against Scott Runyan Pontiac–Buick, Inc. (Scott Runyan), et al.,[2] on November 9, 1990, alleging Scott Runyan engaged in various unfair and deceptive acts in violation of the West Virginia Consumer Credit and Protection Act (CCPA). W.Va.Code, 46A–1–101, *et seq.* Specifically, the Attorney General claimed Scott Runyan sold extended vehicle warranties to automobile buyers at an average cost of over $600 each and collected the purchase prices from consumers but failed to pay the warranty company for the additional coverages. The Attorney General argues that because GMAC and Bank One financed the extended warranty purchases, they are lenders subject to the claims and defenses arising from consumer credit transactions pursuant to W.Va.Code, 46A–2–101; W.Va.Code, 46A–2–102; and W.Va.Code, 46A–2–103.

The plaintiff seeks a reversal of the July 25, 1994, order of the Circuit Court of Kanawha County which granted motions to dismiss filed by GMAC and Bank One.[3] The order stated, in relevant part:

"3. The complaint filed by the Attorney General contains no allegation that the defendants GMAC and/or Bank One have engaged in any unfair or deceptive act(s), or violated any provisions of the [CCPA] and the Attorney General conceded this in his argument/statement to the Court.

"4. ... [N]or is there any allegation or proof offered respecting the actions or activities of these defendants in regard to the

collection of charges in excess of those permitted by *Code* § 46A–7–1 [*sic* 101] et seq. There is no allegation or proof offered that such defendants have willfully violated the subject chapter and the [CCPA]. The actions and activities engaged in by these defendants are within their normal scope of business and there is no showing, contention, or proof offered that such act(s) somehow violated the [CCPA].

\* \* \* \* \* \*

"6. ... [I]t is *only* the borrower, buyer or lessee who may assert such claim as a defense or setoff as against a holder in due course, assignee or lender. The [CCPA] does not authorize the Attorney General to assert those claims on behalf of individual consumers, borrowers or lessees, nor does his office have the statutory standing or authority to assert such claims. In addition, these sections only permit the *buyer* or *lessee* to assert such claims as a defense or seek the cancellation of *that part* of the indebtedness incurred by such alleged fraudulent conduct." (Emphasis in original).

The plaintiff claims he has statutory authority to file suit on behalf of and secure restitution for affected consumers from those who violate the CCPA. W.Va.Code, 46A–7–108 (1974), states: "The attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief." According to the Attorney General, restitution for the consumer falls within the category of "other appropriate relief."

---

was then the Attorney General for the State of West Virginia.

**2.** The suit also was filed against Scott Runyan, individually and as an officer of Scott Runyan Pontiac–Buick, Inc.; Cox Pontiac–Buick, Inc., a West Virginia corporation; A.W. Cox Department Store Co., a West Virginia corporation; Wilber E. Cox, individually; Wilber E. Cox II, individually; Runyan Creditors Trust, Scott Runyan, Trustee; General Motors Acceptance Corporation, a Delaware corporation; Citizens National Bank of St. Albans, a federally chartered bank; and other financial institutions as yet unknown.

**3.** In its order granting the motions to dismiss, the circuit court specified that it considered, in addition to the pleadings, memoranda, and arguments of counsel, certain "documents and exhibits" filed in support of the motions.

Under Rule 12(b) of the West Virginia Rules of Civil Procedure, when matters outside the pleadings are presented, such as documents and exhibits in this instance, the circuit court may consider and treat the motion "as one for summary judgment" under Rule 56 of the Rules of Civil Procedure.

The Attorney General also contends that W.Va.Code, 46A–7–111 (1974),[4] permits him to file suit against creditors for collecting excess charges and to seek refunds for consumers for the amount of the excess charges. The Attorney General asserts that GMAC and Bank One collected money for services the consumers never received and, therefore, they collected fees in excess of those permitted by the CCPA. The Attorney General further argues that "[b]ecause W.Va.Code § 46A–7–111 makes it a *per se* violation of the [CCPA] for a creditor to collect 'charges in excess of those permitted by this chapter[,]' the complaint undeniably asserts a specific violation of the [CCPA] by GMAC and [Bank One] and should not have been dismissed[.]"

## I.

## DISCUSSION

### A.

### Jurisdiction

 Our jurisdiction normally does not encompass appeals from the denial or granting of a motion to dismiss where there are remaining issues to be litigated. However, the granting of the defendants' dispositive pretrial motions to dismiss the claim as against them could have the effect of gutting the lawsuit for all practical purposes. We believe the spirit of Rule 54(b)[5] of the West Virginia Rules of Civil Procedure has been

4. W.Va.Code, 46A–7–111(1), provides, in part:

"After demand, the attorney general may bring a civil action against a creditor for making or collecting charges in excess of those permitted by this chapter. If it is found that an excess charge has been made, the court shall order the respondent to refund to the consumer the amount of the excess charge."
W.Va.Code, 46A–7–111, is quoted and discussed more fully in the text, *infra*.

5. Rule 54(b) provides:

"*Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express

met, and we treat this important appeal as if it falls into this narrow exception to the finality principle and, therefore, is immediately appealable. In the context of a summary judgment, we stated first in Syllabus Point 2 of *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991), and again in Syllabus Point 1 of *Sisson v. Seneca Mental Health/Mental Retardation Council, Inc.*, 185 W.Va. 33, 404 S.E.2d 425 (1991), that the key to determining if an order is final is not whether Rule 54(b) language is included in the order, but is whether the order "approximates a final order in its nature and effect." We now extend application of the rule announced in *Durm* and *Sisson* to a motion to dismiss under Rule 12(b)(6).[6]

### B.

### Standard of Review

This case was dismissed by the circuit court because, in its view, the plaintiff failed to state a claim upon which relief could be granted. The procedural posture is central to the adjudication of the present appeal. Accordingly, we find it necessary to set forth at the beginning of our analysis, a discussion of the settled principles of law that must guide our inquiry when a case is presented in this procedural context.

 Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989).

determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however *designated*, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

6. The expansion of the summary judgment rule is consistent with what we stated in note 1 of *Strahin v. Lantz*, 193 W.Va. 285, 286, 456 S.E.2d 12, 13 (1995), that in "[a]ddressing the finality requirement, we adopt a practical interpretation that looks to the intention of the circuit court." (Citation omitted).

Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure. *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978); *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978). *See also Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80, 85–86 (1957). The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), *citing Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.[7] Indeed, Rule 8 of the Rules of Civil Procedure requires clarity but not detail. Specifically, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" In addition, Rule 8(e)(1) states, in part, that "[e]ach averment of a pleading shall be simple, concise, and direct." The primary purpose of these provisions is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is.

Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based. Nevertheless, despite the allowance in Rule 8(a) that the plaintiff's statement of the claim be "short and plain," a plaintiff may not "fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint[,]" *see Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993), or where the claim is not authorized by the laws of West Virginia. A motion to dismiss under Rule 12(b)(6) enables a circuit court to weed out unfounded suits.

On appeal of this case, the parties do not dispute the facts. To the contrary, they argue the sole issue is one of law and statutory construction. As a result of this inquiry being strictly a matter of statutory construction, our power of interpretive scrutiny is plenary. *See Mildred L.M. v. John O.F.,* 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994). Considering our review is *de novo,* the findings of the circuit court, although relevant, are not binding on this Court.[8] Having settled upon the proper legal standard for review, we now proceed to the merits of this appeal.

### B.

### Analysis of the Attorney General's Statutory Claim

Applying this standard of review, the complaint and this appeal present several important questions of law. The defendants contend they cannot be sued by the Attorney General under the CCPA because they are not in any way guilty of the specific wrongdoing made actionable by the statute. They contend that a fair reading of the complaint indicates they are not alleged to have committed any wrongdoing with regard to the "excess charges" imposed by Scott Runyan. Thus, they assert the complaint is insufficient against them as a matter of law. We believe the defendants misconstrue the law in West Virginia, the pertinent statutory provision, and the allegations against them in the complaint. We hold that the complaint clearly states a claim against the defendants upon which relief can be granted and is sufficient

---

**7.** Our review of the case is limited to the sufficiency of the complaint; thus, we must accept as true all well-pled facts and must draw all reasonable inferences in favor of the dismissed party. *Leatherman v. Tarrant County Narc. Intell. & Coord. Unit,* 507 U.S. 163, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517, 521–22 (1993). Any facts asserted in a memorandum in opposition to a motion to dismiss but not contained in the complaint are relevant to the extent that they "could be proved consistent with the allega-

tions." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984). (Citation omitted).

**8.** Although Rule 52(a) of the Rules of Civil Procedure states, in part, that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule [] 12," as we previously have observed, some explication of a circuit court's reasoning often will prove valuable to both the litigants and the reviewing court.

to withstand a motion to dismiss made pursuant to Rule 12(b)(6). More specifically, we hold that the Attorney General has authority under the CCPA to proceed against holders of notes obtained by their assignor in violation of the law's provisions pursuant to his authority to commence "a civil action against a creditor for making or collecting charges in excess of those permitted" by law. W.Va. Code, 46A–7–111(1).

■ This Court previously explained that the Attorney General's powers are limited to those specifically conferred by statute. As we stated in Syllabus Point 2 of *State ex rel. Fahlgren Martin, Inc. v. McGraw*, 190 W.Va. 306, 438 S.E.2d 338 (1993):

" 'The powers and duties of the Attorney General are specified by the constitution and by the rules of law prescribed pursuant thereto.' Syllabus point 1, *Manchin v. Browning*, 170 W.Va. 779, 296 S.E.2d 909 (1982)."

In *Manchin*, 170 W.Va. at 786, 296 S.E.2d at 916, we followed numerous other jurisdictions that held "[t]he Attorney General has no common law powers and duties where the constitutional provision which creates the office makes no specific grant of powers other than requiring him to perform such duties as are 'prescribed by law.' " (Citations omitted). In *Fahlgren Martin*, 190 W.Va. at 312, 438 S.E.2d at 344, we reiterated:

"[T]he reasoning set forth in *Manchin* remains valid: because the Attorney General has no common law authority, his power is limited to what is conferred by law through statute and the Constitution. Because the Constitution confers only those powers 'prescribed by law,' we turn to the statute to see what powers have been granted by the legislature."

■ If possible, a statute should be construed in a way that conforms to the plain meaning of the text.[9] In *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 23–24, 454 S.E.2d 65, 68–69 (1994), we stated:

"We begin, as we must, by examining the statutory language, bearing in mind

that we should give effect to the legislative will as expressed in the language of the statute.... Generally, words are given their common usage.... Courts are not free to read into the language what is not there, but rather should apply the statute as written. If the statute 'is clear' ...; if 'the statutory scheme is coherent and consistent' ...; and if the law is within the constitutional authority of the lawmaking body that passed it, then the duty of interpretation does not arise, and the rules for ascertaining uncertain language need no discussion." (Citations omitted).

We believe W.Va.Code, 46A–7–111(1), is clear on its face; even if we found there was ambiguity, we would resolve any doubt in this case against the defendants. When a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction. Absent explicatory legislative history for an ambiguous statute governing the duties of the Attorney General under the CCPA, this Court is obligated to consider the overarching design of the statute.

■ The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended. *Kisamore v. Coakley*, 190 W.Va. 147, 437 S.E.2d 585 (1993) (per curiam); *Hubbard v. SWCC and Pageton Coal Co.*, 170 W.Va. 572, 295 S.E.2d 659 (1981); *Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1979).

In surveying the terrain occupied by the statute, the threshold question is whether the circuit court correctly interpreted the CCPA

---

**9.** There are, of course, exceptions to this rule. *See* 2A Norman J. Singer, *Sutherland's Statutes and Statutory Construction* § 46.07 at 126–27

(5th ed. 1992 rev.) (collecting exceptions). The case at bar does not require us to probe the exceptions to the general rule.

insofar as it grants to the Attorney General authority to bring lawsuits against the defendants on behalf of consumers. Under the CCPA, the extent of the Attorney General's special authority to seek relief for consumers is generally set forth in W.Va.Code, 46A–7–108 through –111. W.Va.Code, 46A–7–108 (1974), authorizes the Attorney General to file a civil action "to restrain a person from violating this Chapter and for other appropriate relief." W.Va.Code, 46A–7–109 (1974), allows the Attorney General to bring an action to restrain creditors from engaging in specific types of unconscionable or fraudulent conduct, and W.Va.Code, 46A–7–110 (1974), permits the Attorney General to seek temporary relief when "there is reasonable cause to believe" violations of the CCPA are occurring or will occur. In this case, because the Attorney General did not charge the defendants with any specific, deliberate violations of the CCPA, nor did he make any allegations of ongoing unconscionable or fraudulent conduct requiring temporary injunctive-type relief, the defendants claim that absent specific allegations of conduct which would permit the Attorney General to proceed under W.Va.Code, 46A–7–108, –109, or –110, he is without authority to do so. We disagree.

Our analysis boils down to an inquiry of whether the defendants are liable under W.Va.Code, 46A–7–111(1), by virtue of the "excess charges" the seller imposed upon the consumers. W.Va.Code, 46A–7–111(1), in relevant part, states:

"After demand, *the attorney general may bring a civil action against a creditor for making or collecting charges in excess of those permitted by this chapter. If* it is found that an *excess charge* has been made, the *court shall order* the respondent to *refund* to the consumer the amount of the excess charge. If a creditor has made an excess charge in a deliberate violation of or in reckless disregard for this chapter, or if a creditor has refused to refund an excess charge within a reasonable time after demand by the consumer or the attorney general, the court may also order the respondent to pay to the consumer a civil penalty in an amount determined by the court not in excess of the greater of

either the amount of the sales finance charge or loan finance charge or ten times the amount of the excess charge.... If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability to pay a penalty shall be imposed under this subsection." (Emphasis added).

This statute clearly gives the Attorney General the power to act on behalf of a consumer when an "excess charge" has been imposed. Upon a prevailing action by the Attorney General, the circuit court is explicitly mandated to refund the "excess charge" to the consumer. The circuit court also has discretion to award a civil penalty if there is a "deliberate violation" or "reckless disregard" of the chapter, or "if the creditor has refused to refund an excess charge within a reasonable time after demand[.]" Significantly, a civil penalty may not be imposed upon a creditor if the creditor demonstrates the excess charge was unintentional or a bona fide error.

The defendants appear to base their argument with regard to W.Va.Code, 46A–7–111(1), upon their lack of wrongdoing. However, the law in West Virginia makes the wrongdoing of the defendants irrelevant. In reaching this decision, we are required to move beyond the four corners of the statute's text. In doing so, we find the irrelevancy of the wrongdoing of the defendants has deep roots in precedent and policy. A virtually unbroken skein of our cases are illustrative.

In *One Valley Bank of Oak Hill, Inc. v. Bolen,* 188 W.Va. 687, 425 S.E.2d 829 (1992), a car previously used as a rental car was sold to the purchasers who were unaware of the car's history. On the day the car was purchased, the seller sold the purchasers' credit obligation to One Valley Bank of Oak Hill. Upon learning of the car's history, the purchasers alleged fraud and stopped making payments to the bank. One Valley brought suit against the purchasers, and the purchasers countersued. This Court stated in Syllabus Point 1:

"When a note is created as a result of a consumer transaction, an assignee of such a note takes the note subject to all claims and defenses, regardless of whether the

assignee is a holder in due course. *W.Va. Code* 46A–2–102 [1990]." [10]

Thus, under this analysis, One Valley took the note subject to the claims and defenses the purchasers had as a result of the wrong-doing of the original seller. Similarly, in *Chrysler Credit Corp. v. Copley*, 189 W.Va. 90, 92, 428 S.E.2d 313, 315 (1993), this Court applied Syllabus Point of 1 of *Bolen*, and found the purchasers of a defective car "could, under the CCPA, assert such defects as a defense to the suit [brought] by Chrysler Credit Corporation as the assignee of the financing documents[.]" [11]

 As explained in *Bolen*, 188 W.Va. at 690, 425 S.E.2d at 832, the purpose of the Legislature's enactment of the CCPA and "stripping assignees of consumer commercial paper of most of the benefits of being holders in due course" is "to mitigate the harshness of the holder in due course rules on consumers[.]" [12] *Citing Clendenin Lumber and*

*Supply Co., Inc. v. Carpenter*, 172 W.Va. 375, 379–80, 305 S.E.2d 332, 336–37 (1983). In addition, as is relevant to the present case, in *Harless v. First National Bank*, 162 W.Va. 116, 125, 246 S.E.2d 270, 276 (1978), we also recognized that "under Article 7 of the [CCPA], the Attorney General is given broad powers to supervise, investigate and prosecute violations in order to see that compliance with the [CCPA] is maintained." We can discern no basis for rejecting this imposing array of well-reasoned opinions.

 Thus, under the foregoing cases and W.Va.Code, 46A–7–111(1), the Attorney General clearly has the right to bring a civil action against an assignee to collect a *refund* of an excess charge imposed upon a consumer regardless of whether the assignee committed any wrongdoing. The issue of wrong-doing only is relevant under W.Va.Code, 46A–7–111(1), when the assignee may be subjected to a "civil penalty." [13] If the assignee

---

**10.** W.Va.Code, 46A–2–102, provides, in relevant part:

> "The following provisions shall be applicable to instruments, contracts or other writings, other than negotiable instruments, evidencing an obligation arising from a consumer credit sale or consumer lease ...:
>
> "(1) Notwithstanding any term or agreement to the contrary or the provisions of article two [§ 46–2–101 et seq.], chapter forty-six of this code or section two hundred six [§ 46–9–206], article nine of said chapter forty-six, *an assignee of any such instrument, contract or other writing shall take and hold such instrument, contract or other writing subject to all claims and defenses of the buyer* or lessee *against the seller* or lessor arising from that specific consumer credit sale or consumer lease of goods or services but the total of all claims and defenses which may be asserted against the assignee under this subsection or subsection (3) or subsection (4) of this section shall not exceed the amount owing to the assignee at the time of such assignment except (i) as to any claim or defense founded in fraud: Provided, That as to any claim or defense founded in fraud arising on or after the first day of July, one thousand nine hundred ninety, the total sought shall not exceed the amount of the original obligation under the instrument, contract or other writing and (ii) for any excess charges and penalties recoverable under section one hundred one [§ 46A–5–101], article five of this chapter." (Emphasis added). As is discussed and quoted in the text of this opinion, *infra*, W.Va.Code, 46A–5–101, is relevant to the present case. In interpreting the

statutes, all relevant statutory schemes must be read in *pari materia*.

**11.** The purchasers of the car stopped making payments to the assignee because the car was defective. The assignee sued the purchasers to recover the balance due.

**12.** In note 2 of *Bolen*, 188 W.Va. at 689, 425 S.E.2d at 831, we defined a "holder" and the significance of being a "holder in due course" as:

> "A 'holder' is a person who is in possession of a financial instrument made to his order, or in blank. *W.Va.Code* 46–1–201 [1979]. If a 'holder' takes that note for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person, then the holder is a 'holder in due course'. *W.Va.Code* 46–3–302 [1963]. If one is a holder in due course, then implicitly one has no knowledge of any claims arising from the instrument or defenses against the collection under that instrument. Once a holder is, in fact, a holder in due course, the only valid defenses against him are: infancy, incapacity, duress, illegality of the transaction, fraud in the factum, or a bankruptcy discharge on the part of the maker. *W.Va.Code* 46–3–305 [1963]."

**13.** Had the West Virginia Legislature intended to limit the Attorney General's authorization to bring suit against only wrongdoers, it could have done so with clear language to that effect. We may "assume that our elected representatives ... know the law[.]" *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1958, 60

can establish an unintentional violation or a bona fide error on the part of the wrongdoer, which in this case is the seller,[14] by a preponderance of the evidence, a penalty may not be imposed under this subsection. W.Va. Code, 46A–7–111(1).[15]

Our conclusion is buttressed by nothing less than logic and experience, on one hand, and by precedent on the other hand. Logic and experience dictate that if the types of lawsuits which the Attorney General could bring under the CCPA did not include lawsuits against financial institutions such as the defendants, these institutions could, if unsavory, run in effect a "laundry" for "fly-by-night" retailers that seek to excessively charge their customers. Consequently, the real meaning of consumer protection would be stripped of its efficacy.[16]

■ Again, logic dictates that the burden of cost of the seller's misconduct in violation of the CCPA may be placed on the financing party to the transaction. Financing parties, more so than consumers, are in a position to police the activities of the seller-retailer and to protect themselves against misconduct. *See Custom Pools*, 150 Vt. at 536, 556 A.2d at 74, *citing* George J. Wallace, *The Logic of Consumer Credit Reform*, 82 Yale L.J. 461 (1973). Indeed, "we would be derelict in our duties were we to frustrate that intent . . . it is our duty to give effect and meaning to the will of the Legislature." *Custom Pools*, 150 Vt. at 536, 556 A.2d at 74.

■ In determining that the Attorney General has the authority to litigate excess charges on behalf of a consumer and that the assignee of a consumer note is subject to the claims and defenses a consumer may have against a seller, we recognize that W.Va. Code, 46A–7–111(1), is substantially similar to Section 6.113(1) of the Uniform Consumer Credit Code, 1968 Act. 7 *Uniform Laws Annotated*, Master Edition 841–42 (1985).[17] The first "Comment" following Section 6.113 of the Uniform Act states, in part, that "Subsection (1) allows the [Attorney General] . . . to bring suit for refunds on behalf of all [consumers] who have been overcharged, so long as the statute of limitations specified in the section has not run." As explained in this "Comment," the purpose for allowing the Attorney General to take such action is because "[i]ndividual excess charges are often very small sums; this section provides a practical way to litigate the question of whether such excess charges have been made." *Uniform Laws Annotated* at 842.

The third "Comment" to this section further provides that the Attorney General "may recover excess charges from an assignee only where the assignee has undertaken direct collection or enforcement." *Uniform*

---

L.Ed.2d 560, 576 (1979). Thus, it is logical that the Legislature fully is aware of this Court's decisions and has acquiesced and accepted them as a proper interpretation of the law. *State ex rel. Smith v. Maynard*, 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994).

**14.** In essence, the assignee is standing in the shoes of the seller.

**15.** In addition, under W.Va.Code, 46A–7–111(2):
"The attorney general may bring a civil action against a creditor or other person to recover a civil penalty for *willfully violating* this chapter, and if the court finds that the defendant has engaged in a course of *repeated and willful violations* of this chapter, it may assess a civil penalty of no more than five thousand dollars." (Emphasis added).
However, this appeal does not require us to decide whether an assignee also could be subjected to this penalty by virtue of the wrongdoing of the seller. Therefore, we decline to address whether the defendants could be liable as "the defendant" under this subsection.

**16.** At some point, one must pause and inquire, like Alice to Humpty Dumpty, whether words are infinitely elastic. *See generally* Lewis Carroll, *Alice in Wonderland* 163 (D. Gray ed. 1971) ("When I use a word . . . it means just what I choose it to mean—neither more nor less").

**17.** The differences between Section 6.113(1) of the Uniform Act and W.Va.Code, 46A–7–111(1), are mostly semantical in nature. One sentence that is included in the Uniform Act that was left out of West Virginia's statute appears after the first sentence of Section 6.113(1) and reads: "An action may relate to transactions with more than one debtor." *Uniform Laws Annotated* at 841. The exclusion of this sentence and the other minor differences between the two sections are irrelevant to the issue currently before this Court.

For the historical development of the entire CCPA, see Vincent P. Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W.Va. L.Rev. 401 (1975).

*Laws Annotated* at 843, *citing* Section 5.202(3). Section 5.202(3) virtually is identical to W.Va.Code, 46A–5–101(3) (1974), which states in full:

"A consumer is not obligated to pay a charge in excess of that allowed by this chapter, and if he has paid an excess charge he has a right to a refund. A refund may be made by reducing the consumer's obligation by the amount of the excess charge. If the consumer has paid an amount in excess of the lawful obligation under the agreement, *the consumer may recover* in an action *the excess amount* from the person who made the excess charge or *from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against the consumer arising from the debt.*" (Emphasis added).

*See also* W.Va.Code, 46A–2–102. Thus, the Uniform Act and W.Va.Code, 46A–5–101(3), and W.Va.Code, 46A–7–111(1), do not rest a consumer's ability to be relieved of the responsibility to pay an excess charge or to receive a refund for an excess charge upon the fault of the assignee. The assignee takes the note subject to all the rights a consumer may have against a seller, and, upon demand, the Attorney General may enforce those rights on behalf of a consumer.

There is ample authority from other jurisdictions that have taken a similar approach. Many courts interpret the powers of their State's Attorney General broadly and refuse to restrict the Attorney General's authority to protect the public's interest where the limitations would rob the statute of its purpose. *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038 (1979); *State ex rel. Hartigan v. E & E Hauling, Inc.,* 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165 (1992); *State ex rel. Guste v. Orkin Exterminating Co., Inc.,* 528 So.2d 198 (La.App.1988); *State ex rel. Celebrezze v. Grogan Chrysler–Plymouth, Inc.,* 73 Ohio App.3d 792, 598 N.E.2d 796 (1991); *State v. International Collection Serv., Inc.,* 156 Vt. 540, 594 A.2d 426 (1991).

## III.

## CONCLUSION

Based on the foregoing, the judgment of the Circuit Court of Kanawha County dismissing the defendants based upon the insufficiency of the pleadings and the statutory authority of the Attorney General is reversed, and this case is remanded for further proceedings on the merits of the plaintiff's claims.

Reversed and remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.