IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FRANK D. UNGER and SHERRI J. UNGER,**
**Plaintiffs Below, Petitioners**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-29**          (Cir. Ct. Kanawha Cnty. No. 22-C-17)

**SUSAN PIERCE,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Frank D. Unger and Sherri J. Unger ("the Ungers") appeal the December 22, 2022, order entered by the Circuit Court of Kanawha County. Respondent Susan Pierce timely filed her response.[1] The Ungers did not file a reply. The issue on appeal is whether the circuit court erred in granting Ms. Pierce's motion to dismiss the Ungers' claim of defamation against her and in finding that she was entitled to a qualified privilege of immunity for her statements.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The Ungers own and operate Past Respects, LLC, a business that performs historic preservation services. Ms. Pierce is the Director of the West Virginia State Historic Preservation Office ("SHPO"). On or around July 31, 2022, the Ungers contracted with the Vandalia Heritage Foundation ("the Foundation") to perform work on the Davis Coal and Coke Administration Building ("Davis Building"), located in Thomas, West Virginia. The contract with the Foundation stated that the Ungers would install a rubble stone floor in the Davis Building using existing limestone materials in the basement. Further, the contract provided that the Ungers would repair or replace basement-level exterior doors, and that the doors should include ventilation panels. As part of their work on the project, the Ungers added a brick walkway and a ventilation system to the basement, neither of which were original historic features of the building.

---

[1] The Ungers are self-represented. Ms. Pierce is represented by Charles R. Bailey, Esq., and Celeste E. Webb, Esq.

A portion of the funding used to pay the Ungers for their work on the Davis Building came from grant money administered by the SHPO. Funding for these grants comes, in part, from the National Parks Service ("NPS"). All projects that receive these funds must comply with the Standards for Historic Preservation Projects promulgated by the Department of the Interior and enforced by the NPS. The SHPO bears the responsibility of ensuring that historic preservation projects completed with these funds comply with the applicable standards.

After the Ungers completed their scheduled work on the Davis Building, Ms. Pierce contacted the NPS for guidance regarding the historical accuracy of the work performed and to ensure that the completed work met the standards set forth by the Department of the Interior. All communications between Ms. Pierce and the NPS were made within her capacity as the Director of the SHPO. Ms. Pierce and the NPS representative discussed whether the rubble stone flooring created a false sense of history, and whether the ventilation system installed in the basement doors was inappropriate. Ms. Pierce expressed concern that the project was in violation of Standard 3 of the Department of the Interior's Standards, which states that "[e]ach property will be recognized as a physical record of its time, place, and use. Changes that create a false sense of historical development, such as adding conjectural features or elements from other historic properties, will not be undertaken."

The Ungers filed their initial complaint in this matter in the Circuit Court of Kanawha County on January 10, 2022, asserting a claim of defamation against Ms. Pierce. The Ungers alleged that Ms. Pierce stated that the work completed by the Ungers was in violation of standards promulgated by the Department of the Interior, even though the terms of the contract were previously approved by the SHPO. Additionally, the Ungers alleged that an NPS representative, a third party, was consulted to determine whether the standards had been violated. The Ungers averred that Ms. Pierce was negligent in failing to research the terms of the contract and the specifications of the Davis Building project. Further, the Ungers alleged loss of income in the amount of $20,000, personal emotional distress, and damage to the reputation of their business based on Ms. Pierce's statements.

Ms. Pierce moved to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to West Virginia Rules of Civil Procedure Rule 12(b)(6). She argued that any comments made to the NPS representative regarding the Davis Building fell within the scope of her employment with the SHPO and were thus protected by qualified privilege. Further, Ms. Pierce argued that the Ungers failed to allege any facts demonstrating that Ms. Pierce acted fraudulently, maliciously, or oppressively in her communications with the NPS. Additionally, Ms. Pierce stated that the Ungers failed to establish any injury caused by her statements. Further, Ms. Pierce alleged that all statements that she made to the NPS were true, and thus by definition not defamatory. Finally, Ms. Pierce argued that to the extent the Ungers were asserting a breach of contract

action, that claim would need to be brought before the West Virginia Legislative Claims Commission.

The circuit court granted Ms. Pierce's motion to dismiss by order entered December 22, 2022. The circuit court found that Ms. Pierce was acting within the scope of her role as Director when she communicated with the NPS regarding the Ungers' work on the Davis Building. Further, the circuit court found that Ms. Pierce is an employee of a state agency and is therefore immune from liability for actions within the scope of her duties. Additionally, the circuit court found that none of the statements made by Ms. Pierce were in violation of a clearly established constitutional right, nor were they fraudulent, malicious, or oppressive. The circuit court also held that the Ungers failed to allege any facts that would overcome the immunity expressly granted to Ms. Pierce as a matter of law. The circuit court noted that to the extent the claims brought by the Ungers arose out of a contractual dispute, they must be brought before the Legislative Claims Commission. Lastly, the circuit court held that the Ungers failed to allege facts sufficient to maintain a cause of action for defamation. Based on the foregoing, the circuit court dismissed the Ungers' complaint with prejudice. It is from this order that the Ungers now appeal.

The Supreme Court of Appeals of West Virginia has set forth our standard of review: "[a]ppellate review of a circuit court's order granting a motion to dismiss is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Further, "the circuit court, viewing all facts in a light most favorable to the nonmoving party, may grant the motion only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [her, or its] claim, which would entitle him to relief.'" *Id*. at 776, 461 S.E.2d at 522 (citing Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)).

On appeal, the Ungers assert several assignments of error. First, the Ungers argue that the circuit court erred in finding that Ms. Pierce was entitled to qualified immunity. Second, the Ungers aver that the circuit court erred in finding they did not prove the elements required for a defamation case. Third, the Ungers assert that the circuit court improperly assigned counsel for Ms. Pierce to draft the findings of fact for the final order. Next, the Ungers argue that the final order does not reflect important facts in the case, and that the circuit court did not properly address the responsibilities of the parties to the contract. Further, the Ungers aver that the circuit court is the proper forum for this issue rather than the Legislative Claims Commission. Finally, the Ungers argue that purported political connections between Judge Webster and the State Historic Preservations Office played a role in the outcome of their case below.

The Supreme Court of Appeals of West Virginia has held that:

A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1, et seq. is

3

entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.

Syl., *State v. Chase Securities, Inc.*, 188 W. Va. 356, 364-65, 424 S.E.2d 591, 599-600 (1992). "In [the] absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syl. Pt. 11, in part, *West Virginia Reg'l Jail and Corr. Facility Auth. v. A.B*, 234 W. Va. 492, 766 S.E.2d 751 (2014). Further, our Supreme Court has stated that "[t]he ultimate decision of whether qualified or statutory immunity bars a civil action is one of law for the court to determine." Syl. Pt. 1, in part, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

Upon review of the record, we find no merit in the Ungers' arguments that the circuit court erred in holding that their claims against Ms. Pierce were barred by qualified immunity. The record demonstrates that the alleged defamatory statements were made while Ms. Pierce was acting within the scope of her position as the director of the SHPO. Ms. Pierce is an employee of a state agency, and she is immune from actions within the scope of her duties. Further, there is no evidence in the record that the statements made by Ms. Pierce were in violation of a clearly established constitutional right or law, and they were not otherwise fraudulent, malicious, or oppressive. As part of her role with the SHPO, Ms. Pierce is tasked with ensuring that projects completed with NPS funding comply with the standards promulgated by the Department of the Interior. It is well within Ms. Pierce's discretion as Director of the SHPO to discuss these historic preservation projects with the NPS, as well as whether the completed projects comply with these standards. The Ungers did not allege any facts that would overcome the immunity granted to Ms. Pierce by law. Based on the foregoing, we find that the circuit court did not err in finding that Ms. Pierce was entitled to qualified immunity for her statements to the NPS.

Next, we turn to the Ungers' assignment of error regarding their defamation claim against Ms. Pierce. Our Supreme Court has held that in order for private individuals to maintain an action for defamation, the following elements must be proved: "1) defamatory statements, (2) a nonprivileged communication to a third party, (3) falsity, (4) reference to the plaintiff, (5) at least negligence on the part of the publisher, and (6) resulting injury." Syl. Pt. 5, *Zsigray v. Langman*, 243 W. Va. 163, 842 S.E.2d 716 (2020) (citing Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983)).

Upon review, we agree with the circuit court that the Ungers did not allege the necessary elements for a defamation claim. The Ungers are unable to assert a defamation claim against Ms. Pierce, as she is entitled to qualified immunity for her statements. Even assuming for the sake of argument that the claim could proceed, the Ungers did not allege the necessary elements for a defamation claim. The Ungers' complaint did not allege sufficient facts to establish that Ms. Pierce made defamatory statements; that the statements

4

were false; that Ms. Pierce was negligent in making the statements; or that they suffered a resulting injury based on the statements. For these reasons, we find that the circuit court did not err in holding that the Ungers did not allege sufficient facts to maintain a cause of action for defamation against Ms. Pierce.

Further, the Ungers assert that the circuit court erred in assigning the drafting of the final order to counsel for Ms. Pierce. The Ungers further argue that the findings of fact in the final order do not adequately discuss the facts of the case, and that counsel for Ms. Pierce was biased in preparing the final order. Rule 24.01(c) of the Trial Court Rules actually contemplate the practice of counsel for the parties preparing proposed orders, and states, in part:

> counsel responsible for the preparation and presentation of an order may submit the original of the proposed order to the judicial officer within eleven (11) days, with a copy to opposing counsel along with a notice to note objections and exceptions to the order within five (5) days after the receipt of the proposed order or such lesser time as the judicial officer directs.

With respect to objections to proposed orders, Rule 24.01(d) of the Trial Court Rules state:

> In the event counsel has any objections regarding the wording or content of a proposed order, counsel shall have the affirmative duty of contacting the preparer thereof before contacting the judicial officer in an effort to seek a resolution of the conflict. If the conflict cannot be resolved in this manner, counsel having an objection shall promptly submit a proposed order to the judicial officer and opposing counsel as set forth in subsection (c) along with a letter to the judicial officer, indicating the reason for the change(s).

The record demonstrates that Judge Webster ordered Ms. Pierce's lawyer to draft the proposed order. This was done in accordance with the Trial Court Rules. There is no evidence in the record that the Ungers contacted counsel for Ms. Pierce regarding their concerns with the proposed Final Order. Further, the Ungers did not submit an alternative proposed order to the circuit court in accordance with the rules, and their objection to the Final Order was noted. For these reasons, we find that the circuit court did not err in ordering counsel for Ms. Pierce to draft the final order.

Further, the Ungers assert that the Final Order did not properly include facts such as a contractual provision regarding the use of rubble stone floor in completing the Davis Building project; that Ms. Pierce did not have the right to seek a third-party review of their work; and that a separate Roane County circuit court case was not considered. We find no merit in this assignment of error, as these facts would not overcome the qualified immunity granted to Ms. Pierce, or the fact that the complaint did not allege sufficient facts to

5

establish a case for defamation. While it is possible that the contract required work that was not consistent with historic standards, the statements made by Ms. Pierce did not create an action for defamation.

Next, we turn to the Ungers' assignment of error regarding the circuit court's holding that any contractual dispute between the parties should be brought before the Legislative Claims Commission.[2] The Ungers argue that the circuit court was the appropriate forum for them to resolve their claims. The circuit court concluded that to the extent that any of the Ungers' claims arose out of a contractual dispute, said claims must be initiated in the West Virginia Legislative Claims Commission. West Virginia Code § 14-2-13 (2017) provides that the "claims and demands, liquidated and unliquidated. . . against the state or any of its agencies, which the state as a sovereign commonwealth should in equity and good conscience discharge and pay. . . " are within the jurisdiction of the Legislative Claims Commission. Our Supreme Court of Appeals has held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside of the traditional constitutional bar to suits against the State." Syl. Pt. 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983). The Ungers did not allege in their complaint that they were seeking recovery up to the limits of the state's liability insurance coverage, nor did they show that there was insurance that would cover their claim. Thus, any claims related to a contractual dispute between the Ungers and the State Historic Preservation Office should have been brought before the Legislative Claims Commission.

Finally, the Ungers assert that political connections between Commissioner Randal Reid Smith and Judge Webster played a role in the circuit court's decision. This assignment of error does not contain citations to the record, nor does it involve an error in the final order. Further, the Ungers did not make any objection below to Judge Webster's participation in this case or reference any purported political connections that they believed would affect the outcome of their case. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996). Further, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal" and that "[t]he Intermediate Court. . . may disregard errors that are not adequately supported by specific references to the record on appeal." Our Supreme Court

---

[2] We note here that the Ungers filed a Motion for Leave to Supplement the Appendix in this case. This Court denied the motion on March 28, 2023. Thus, the additional evidence submitted by the Ungers on appeal will not be considered.

of Appeals has further noted that "[a] skeletal argument, really nothing more than an assertion, does not preserve a claim. . . ." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011). Because this assignment of error was not raised below, it will not be considered on appeal.

Based on the foregoing, we find that the circuit court did not err in granting Ms. Pierce's motion to dismiss. Accordingly, we affirm the circuit court's December 22, 2022, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen