IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0329

_____

FILED

June 12, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MICHAEL D. RUBLE and
BRENDA K. RUBLE,
Plaintiffs below, Petitioners,

v.

RUST-OLEUM CORPORATION, ET AL.
Defendants below, Respondents.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Paul T. Farrell, Judge
Civil Action No. 19-C-127

REVERSED AND REMANDED

_____

Submitted: March 12, 2024
Filed: June 12, 2024

R. Dean Hartley, Esq.
Mark R. Staun, Esq.
David B. Lunsford, Esq.
Hartley Law Group, PLLC
Wheeling, West Virginia
Counsel for the Petitioners

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
James J.A. Mulhall, Esq.
Morgantown, West Virginia
Dallas F. Kratzer III, Esq.
Columbus, Ohio
Counsel for Respondent Matrix Chemical
LLC

Rodney L. Baker, II, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia

Counsel for Respondent The Early
Construction Company

Niall A. Paul, Esq.
Charity K. Lawrence, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Respondent E.I. du Pont de
Nemours and Company

Edward A. Smallwood, Esq.
Leo G. Daly, Esq.
Colby S. Bryson, Esq.
Post & Schell, P.C.
Pittsburgh, Pennsylvania
Counsel for Respondents Nouryon
Functional Chemicals, incorrectly named
as "Akzo Nobel Functional Chemicals,
LLC, a Delaware limited liability
company"; Nouryon Chemicals LLC, as
successor to Akzo Chemicals LLC,
formerly known as Akzo Chemicals Inc.,
incorrectly named as "Akzo Nobel
Chemicals, Inc., a Delaware corporation";
Bayer Corporation and Bayer
CropScience, LP; and Monsanto Company

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE BUNN, deeming herself disqualified, did not participate in the Opinion of the Court.

JUDGE NINES, sitting by temporary assignment.

CHIEF JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."  Syl. pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

2.      "Relitigation of an issue is not precluded when a new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in two courts.  Where the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims, a compelling reason exists not to apply collateral estoppel."  Syl. pt. 2, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

3.      "For purposes of issue preclusion, issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rules, even though the factual settings of both suits may be the same."  Syl. pt. 3, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

i

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Cabell County, we consider the doctrine of collateral estoppel. Specifically, we consider whether collateral estoppel (sometimes called "issue preclusion") applies such that a finding in a West Virginia workers' compensation decision may be used to preclude litigation of that issue against a third party in a West Virginia circuit court.

In this case, a plaintiff alleges that he was injured when he was exposed at his employer's worksite to defective, toxic chemicals manufactured by third parties. The plaintiff filed a product-defect lawsuit against the third-party manufacturers, as well as a workers' compensation claim with his employer. The workers' compensation administrative process produced a decision finding that the plaintiff failed to prove he developed an injury in the course of and as a result of his employment. The third-party manufacturers subsequently filed a motion to dismiss the product-defect lawsuit, arguing that the plaintiff was collaterally estopped from litigating causation in the courtroom when that issue had been resolved by the workers' compensation administrative decision. The circuit court granted the motion to dismiss.

As set forth below, we reverse the circuit court's dismissal order. We find that the workers' compensation process involved legal standards and procedural rules that were substantially different from those in a courtroom, and that process did not afford the plaintiff a full and fair opportunity to litigate whether the third-party manufacturers'

1

chemicals were a cause of his injury. Accordingly, we reverse the circuit court's order and remand the case for further proceedings.

## I. Factual and Procedural Background

Between 1996 and 2018, plaintiff Michael D. Ruble worked at a chemical manufacturing plant near Lesage, West Virginia.[1] The plaintiff worked in the making of polyurethane stains, paint strippers, xylene, acetone, and other paint-related products. In the course of his employment, the plaintiff asserts he worked with, and was exposed to the hazards from, various toxic raw materials supplied by the "Chemical Supplier Defendants."

Starting in 2016 or 2017, the plaintiff says he began having some breathing problems that he attributed to his chemical exposure at work. By late 2017, the plaintiff alleges he began showing symptoms of tremors, swollen hands and feet and numbness, weakness, memory problems, and difficulty walking. He stopped working on May 1, 2018.

On March 18, 2019, the plaintiff filed suit against his past and current employers ("the Employer Defendants")[2] and against some of the Chemical Supplier Defendants. The plaintiff amended his complaint to add additional Chemical Supplier

---

[1] The plant's owners varied over the years from Zinsser Co., Inc. and its subsidiary, New Parks, to its current owners, RPM International, Inc., and its subsidiary, Rust-Oleum Corporation.

[2] The plaintiff alleged that his past and present employers had demonstrated a deliberate intention to cause him harm by repeatedly exposing him to unsafe working conditions, in violation of West Virginia Code § 23-4-2 (2015).

2

Defendants after receiving discovery from the Employer Defendants. In general, the plaintiff asserted that the Chemical Supplier Defendants had sent defective, toxic chemicals into the stream of interstate commerce and to the Lesage facility where he worked, and that these chemicals caused or contributed to his medical and physical problems.

Contemporaneously, the plaintiff sought a workers' compensation remedy from his most recent employer, RPM International. The plaintiff filed a claim for occupational disease[3] benefits, but the employer's claims administrator rejected the claim. The plaintiff appealed the claims administrator's decision to the West Virginia Workers' Compensation Office of Judges ("the OOJ").[4] The record contains the decision of an administrative law judge employed by the OOJ, but that decision suggests that no hearings were held before that judge or any other OOJ judge. Instead, the decision indicates the parties merely proffered evidence into the record. The plaintiff admitted a copy of his deposition testimony, various medical reports from doctors he has visited over the years, several articles from medical journals, and an expert report stating that an interview with the plaintiff demonstrated that the employer violated various safety regulations. The employer submitted written reports from medical examinations it requested, and an affidavit from a company employee describing safety equipment on the premises, such as

---

[3] *See* W. Va. Code § 23-4-1(f) (establishing guidelines for occupational disease awards).

[4] Effective October 1, 2022, the Office of Judges was terminated, and all of its cases were transferred to the Workers' Compensation Board of Review. *See* W. Va. Code § 23-5-8b (2021).

ventilation fans, and protective equipment that was given to employees. After submitting evidence to the OOJ, both parties submitted written closing arguments.

In his decision dated October 15, 2020, an OOJ administrative law judge reviewed the submitted evidence and concluded that "[a] preponderance of the evidence indicates that the substances which are blended, filled and shipped at the employer's worksite can be toxic[.]" The judge also found that while the "employer makes efforts to ensure that its employees have reduced exposure to fumes and liquids from its products," "a preponderance of the evidence indicates there are gaps in this process." However, the judge found "the evidence regarding the [plaintiff's] direct exposure to fumes and/or liquids is inconsistent and inconclusive." Importantly, the decision does not deny the existence of the plaintiff's physical and medical problems; instead, the decision affirmed the denial of the plaintiff's claim because he did not prove, by a preponderance of the evidence, that he developed an occupational disease "in the course of and as a result of employment."

The plaintiff appealed this decision to the West Virginia Workers' Compensation Board of Review ("the Board"). In an order dated April 22, 2021, and in a generalized fashion, the Board "adopt[ed] the findings of fact and conclusions of law of the Administrative Law Judge's Decision dated October 15, 2020, which relate to the issue on appeal[.]" The Board then summarily affirmed the decision from the OOJ denying the plaintiff's claim for workers' compensation benefits. The plaintiff did not appeal the Board's decision to this Court.

4

Thereafter, the plaintiff and the Employer Defendants jointly agreed to voluntarily dismiss the Employer Defendants from the case. On December 9, 2021, the circuit court entered an order dismissing the claims filed by the plaintiffs against the Employer Defendants. However, the order also dismissed all of the cross-claims filed by the Chemical Supplier Defendants against the Employer Defendants.

Counsel for one of the Chemical Supplier Defendants, Matrix Chemical LLC, objected to the dismissal order. In response, counsel for the Employer Defendants explained that the basis for the dismissal order was the outcome of the workers' compensation proceeding. The Employer Defendants supplied the circuit court with copies of the OOJ decision and the order from the Board, both affirming the denial of the plaintiff's workers' compensation claim. Upon receipt of these documents, Matrix filed a motion to dismiss the plaintiff's complaint under West Virginia Rule of Civil Procedure 12(b)(6). Other Chemical Supplier Defendants promptly joined Matrix's motion.

The basis of Matrix's motion to dismiss was the doctrine of collateral estoppel. Matrix argued that the plaintiff litigated to conclusion before the OOJ the same issue he was attempting to litigate before the circuit court, namely whether he had been injured by exposure to chemicals in the workplace. Because the workers' compensation administrative process had resulted in a final ruling that the plaintiff had failed to establish an injury caused by workplace exposure, Matrix argued that the plaintiff could not collaterally challenge or relitigate that final ruling before the circuit court.

5

In an order dated April 4, 2022, the circuit court granted the motion to dismiss. The circuit court determined that collateral estoppel attached to the causation determination from the workers' compensation decision, in part because an individual in the workers' compensation administrative process may be represented by counsel and may request written discovery, take depositions, and proffer expert witnesses. The circuit court found, in part, that the plaintiff "had a full and fair opportunity to address the cause of his injuries[.]" Accordingly, the circuit court dismissed the plaintiff's claims as to all of the defendants remaining in the case.

The plaintiff now appeals the circuit court's April 4, 2022, dismissal order.

## II. Standard of Review

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

## III. Discussion

The central question raised by the plaintiff's appeal is whether collateral estoppel, also called issue preclusion, attaches to a finding made in a West Virginia workers' compensation administrative proceeding so that the issue may not be litigated,

6

again, in a subsequent tort proceeding against a third party.[5] In *State v. Miller*, 194 W. Va. 3, 9, 459 S.E.2d 114, 120 (1995), we discussed the doctrine of collateral estoppel. We identified four elements that must all be established for an issue decided in a prior action to have preclusive effect in a later action. We stated:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) *the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.*

Syl. pt. 1, *State v. Miller*, 194 W. Va. at 6, 459 S.E.2d at 117 (emphasis added).

In this appeal, we focus our attention on the fourth factor, and assess whether the plaintiff (against whom the collateral estoppel doctrine was raised in the circuit court) had a full and fair opportunity to litigate the issue of causation in the prior workers' compensation administrative proceedings. In Syllabus Point 2 of *Miller*, we found collateral estoppel does not apply, and relitigation of an issue in a subsequent proceeding is permitted, when there are "differences in the quality or extensiveness of the procedures followed in two courts. Where the procedures available in the first court may have been

---

[5] The plaintiff raises complicated arguments that the plaintiff has a right based on the West Virginia Constitution and the history of the workers' compensation system to have a jury hear his common law claims, and, therefore, that collateral estoppel cannot employ a workers' compensation ruling to prevent a jury from ruling on a claim. Because we decide this appeal in favor of the plaintiff on other grounds, we need not address these arguments.

tailored to the prompt, inexpensive determination of small claims, a compelling reason exists not to apply collateral estoppel." We based this syllabus point on Section 28(3) of *Restatement (Second) of the Law of Judgments* (1982), which states in comment d that collateral estoppel should not apply where the simple procedures of the first forum are "wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim." *See Miller*, 194 W. Va. at 10, 459 S.E.2d at 121. As the United States Supreme Court stated in *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159 (2015),

> Issue preclusion may be inapt if 'the amount in controversy in the first action [was] so small in relation to the amount in controversy in the second that preclusion would be plainly unfair.' *Restatement (Second) of Judgments* § 28, Comment j, at 283-284. After all, "[f]ew . . . litigants would spend $50,000 to defend a $5,000 claim." [Charles] Wright & [Arthur] Miller[, 18 Fed. Prac. & Proc. Juris.] § 4423, at 612 [(2d ed. 2002)].

Moreover, in Syllabus Point 3 of *Miller* we further expounded on the fourth factor of the collateral estoppel test, finding that, "[f]or purposes of issue preclusion, issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rules, even though the factual settings of both suits may be the same." Syl. pt. 3, *Miller*, 194 W. Va. at 6, 459 S.E.2d at 117. "Therefore, not only the facts but also the legal standards and procedures used to assess them must be similar." *Id.* at 10, 459 S.E.2d at 121. *See also* Charles A. Wright & Arthur R. Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (3d ed. 2024) ("[i]ssues are not identical if the second action involves application of a different legal standard, even though

8

the factual setting of both suits be the same.") (quoting *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9ᵗʰ Cir. 1971)).  Stated differently, collateral estoppel should not be applied

> when the party against whom it is invoked can avail himself of procedures in the second action that were not available to him in the first action and that may have been significantly influential in determination of the issue.  Differences in this regard include such procedures as discovery devices and plenary as distinct from summary hearing.  It may also be relevant that the party against whom preclusion is invoked had no choice, or restricted choice, as to the forum in which the issue was litigated.

*Restatement (Second) of Judgments* § 29 cmt. d (1982).  An administrative decision may have preclusive effect, but "only if it resulted from a procedure that seems an adequate substitute for judicial procedure."  18B Fed. Prac. & Proc. Juris. § 4475.

The question, then, is whether the workers' compensation administrative procedures used in the plaintiff's claim were such that they may be an adequate substitute for juridical procedures in the circuit court.  We find that they were not.  The administrative procedures used in West Virginia workers' compensation proceedings made numerous accommodations to economy and celerity that are directly at odds with procedures in the circuit courts.  West Virginia Code § 23-1-15 (2022) specifies that the workers' compensation process "is not bound by the usual common-law or statutory rules of evidence[.]"  The legislative rules adopted by the Office of Judges to regulate the litigation

9

of workers' compensation claims, 93 C.S.R. § 1 (2008),[6] mirrored the above statute, stating that "[t]he Office of Judges shall not be bound by the usual common law or statutory rules of evidence, or by formal rules of procedure, except as provided by these rules." 93 C.S.R. § 7.2. These rules governed the plaintiff's workers' compensation claim.

The rules employed by the OOJ embodied informality. For instance, the rules generally specified that the only parties who could litigate were "the injured worker" and "the employer."[7] Hence, the rules excluded the collection or development of evidence or litigation of issues involving third parties, like the manufacturers of the products that might have injured the plaintiff. Closing arguments were not made orally (as they would be in a courtroom) and were not done in any particular order; instead, arguments were usually presented in writing at any time[8] and could even be offered "in lieu of evidence."[9] Evidence was usually presented with little testing – by simply mailing affidavits, written reports, test results, or other documents to the main offices of the OOJ.[10]

---

[6] As noted earlier, the Office of Judges was abolished by the Legislature and its duties assumed by the Board. Hence, in December 2022, the Board asked that these procedural rules be repealed.

[7] 93 C.S.R. § 3.2.

[8] 93 C.S.R. §§ 3.5 and 6.5.

[9] 93 C.S.R. § 3.6.

[10] 93 C.S.R. § 7.3.

Under the rules, the parties were entitled to "discovery," but only in a very truncated format: each "party" was limited to thirty written interrogatories submitted to the other "party" (and each subpart of an interrogatory counted as a separate interrogatory).[11] Employers could procure the employee's medical records,[12] but the rules contain no reciprocal process permitting the employee to request documents or records from the employer's files. The OOJ rarely held hearings, and if so, the hearing would not necessarily be conducted by the administrative law judge who would later adjudicate the claim and sign the final decision. Instead, parties were "encouraged" to use depositions (paid for by the party requesting the deposition).[13] Depositions were generally limited to cross-examining the opposing-party's medical witness and the employer cross-examining the employee. In this system, the administrative law judge could not make credibility judgments based on the witness's demeanor or temperament; instead, credibility determinations were made on a written transcript. Most expert opinions came in the form of written reports[14] or a doctor's summary after an office visit. In this case, the OOJ decision appears, in part, to have been founded on documents prepared by the employer declaring that it used fans to eliminate fumes from the workplace. The OOJ's procedural

---

[11] 93 C.S.R. § 7.2.B.2(b).

[12] 93 C.S.R. § 7.2.B.3.

[13] 93 C.S.R. § 13.1, 13.2.

[14] 93 C.S.R. § 7.2.B.4.

11

rules allowed the admission of this evidence while simultaneously depriving the plaintiff of an opportunity to dispute the evidence.

Even though there are factual similarities between the plaintiff's workers' compensation proceeding and his claims in the circuit court, the procedural rules for developing those claims in the circuit court involved vastly different legal standards and procedural rules from those before the OOJ. The record reflects that, when the plaintiff began both his lawsuit and his workers' compensation claims, he was unable to identify the toxic materials to which he was exposed at the worksite or the manufacturers of those materials. Before the lawsuit was filed, the employer refused to produce this information. The procedural rules in the workers' compensation system did not permit inspections of the plant, testing of the employer's ventilation system, or sampling of the air at employee workstations to assess where and how an employee might be exposed to toxic materials. Nor did the rules permit an employee to request that the employer produce documentary evidence of workplace conditions, or of prior inspections or citations by government regulatory agencies. Hence, the rules precluded the plaintiff from developing proof beyond his own statements and recollections as to the materials to which he was exposed.

Further, how damages are developed, proven, and awarded in a workers' compensation claim is substantially different from a civil claim, and that difference affects how evidence is developed. In a workers' compensation claim, in addition to medical

benefits for the injury,[15] the employee can usually only recover limited "damages" in the form of temporary total disability (that provides a small percentage of the employee's salary to pay bills while the employee is off work),[16] and permanent partial disability (to compensate for any permanent physical impairments), both of which are calculated as a portion of the employee's weekly wage (but are capped by the average weekly wage of all workers in West Virginia).[17] Attorney fees in workers' compensation claims are capped at 20% of the equivalent to 208 weeks of benefits.[18] Thus, with the combination of limited benefits and limited fees, our workers' compensation statutory scheme disincentivizes a

---

[15] While medical benefits may be paid for so long as the employee continues to need care, the medical benefit may be terminated if the employee ceases to receive any "medical or any type of rehabilitation service . . . or durable medical goods or other supplies" for a period of five years. W. Va. Code § 23-4-16(a)(4) (2005).

[16] Employees receive temporary total disability benefits equal to "sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee, at the date of injury, not to exceed one hundred percent of the average weekly wage in West Virginia." W. Va. Code § 23-4-6(b) (2005). Temporary benefits may be paid for a maximum of two years. *Id.* Employees also cannot receive temporary disability benefits for the first three days they are off for a work-related injury; only if the disability lasts longer than seven days can the employee collect the full benefit amount. W. Va. Code § 23-4-5 (2003).

[17] Permanent partial disability awards are based upon the employee's percentage of whole-body physical impairment caused by the workplace injury. W. Va. Code 23-4-6(i). The award is usually calculated "on the basis of four weeks' compensation for each percent of disability determined at the maximum or minimum benefit rates as follows: Sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee at the date of injury, not to exceed seventy percent of the average weekly wage in West Virginia[.]" W. Va. Code § 23-4-6(e)(1).

[18] "In no case may the fee received by the attorney of the claimant or dependent be in excess of 20 percent of the benefits to be paid during a period of 208 weeks." W. Va. Code § 23-5-16(a) (2022).

13

workers' compensation lawyer from spending monies on discovery and experts likely to consume or exceed the employee's recovery to prove a complicated third-party, toxic injury workers' compensation claim, and to suggest otherwise is illogical.

In summary, we find that the plaintiff (against whom the collateral estoppel doctrine was raised in the circuit court) did not have a full and fair opportunity to litigate the issue of the causation of his injuries in the prior, workers' compensation administrative proceedings. The administrative law judge did not find the plaintiff did not have an injury, but rather found he could not prove an injury in the course of and as a result of his employment. Employees injured in the course of their job are supposed to be able to pursue workers' compensation benefits quickly, recover enough to pay their medical bills, and gain wage replacement sufficient to keep bread on the table and the wolves away from the door. Upholding the circuit court's dismissal would deter employees from seeking workers' compensation until any third-party claims have been developed and resolved in a circuit court. This is directly contrary to the Legislature's command that employees injured on the job by a third party are allowed to pursue both a workers' compensation claim and a claim against the third party. *See* W. Va. 23-2a-1 (2022) ("Where a compensable injury or death is caused, in whole or in part, by the act or omission of a third party, the injured worker . . . shall not by having received [workers'] compensation be precluded from making claim against the third party."). Accordingly, as all four factors of the test in Syllabus Point 1 of *Miller* were not established, we find it was error for the circuit court to have applied collateral estoppel to the plaintiff's claims.

14

## IV. Conclusion

Thus, the circuit court's April 4, 2022, dismissal order must be reversed, and the case remanded for further proceedings.

Reversed and Remanded.